UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

**FILED**

OCT 1 1 2007
OCT 11 2007
WAYNE R. ANDERSEN
U. S. DISTRICT COURT JUDGE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | No. 07 CR 364-16 |
| vs. | ) | Judge Wayne R. Andersen |
| | ) | |
| LINDA LASKOWSKI | ) | |

## PLEA AGREEMENT

1.      This Plea Agreement between the United States Attorney for the Northern

District of Illinois, PATRICK J. FITZGERALD, and defendant LINDA LASKOWSKI, and

her attorney, PHILIP A. IGOE, is made pursuant to Rule 11 of the Federal Rules of Criminal

Procedure.  The parties to this Agreement have agreed upon the following:

### Charges In This Case

2.      The indictment in this case charges defendant with conspiracy to commit

marriage fraud, in violation of Title 18, United States Code, Section 371 (Count One); and

marriage fraud, in violation of Title 8, United States Code, Section 1325(c) and Title 18,

United States Code, Section 2 (Count Sixteen).

3.      Defendant has read the charges against her contained in the indictment, and

those charges have been fully explained to her by her attorney.

4.      Defendant fully understands the nature and elements of the crimes with which

she has been charged.

## Charge to Which Defendant is Pleading Guilty

5.     By this Plea Agreement, defendant agrees to enter a voluntary plea of guilty to Count One of the indictment. Count One charges defendant with conspiring to commit marriage fraud, in violation of Title 18, United States Code, Section 371.

## Factual Basis

6.     Defendant will plead guilty because she is in fact guilty of the charge contained in Count One of the indictment. In pleading guilty, defendant admits the following facts and that those facts establish her guilt beyond a reasonable doubt:

Beginning no later than late 2002 and continuing through in or about January 2005 (the "Relevant Time Period"), at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere, Linda Laskowski did knowingly conspire with others, including coconspirators Jeremy Starnes, Tammy Daniels, Brooke Thompson, Tina Chaney, Cari Arrieta, Bridgette Thompson, Fred Chaney, and Amy Dupree, to commit certain offenses against the United States, namely, to knowingly enter into marriages for the purpose of evading provisions of the immigration laws, namely Title 8, United States Code, Sections 1154 and 1186a, which provisions restrict the availability of legal permanent resident status, applied for on the basis of marriage to a United States citizen, to those foreign nationals who have entered into the marriage in good faith, not in exchange for something of value and not for the purpose of procuring the foreign national's admission as an immigrant, and to aid and abet the commission of said offenses, in violation of Title 8, United States Code, Section

2

1325(c) and Title 18, United States Code, Section 2, in violation of Title 18, United States Code, Section 371.

Specifically, on or about January 16, 2003, Laskowski married co-defendant Boris Medik, a foreign national. Laskowski married Medik so that Medik could obtain United States immigration benefits. In return, Laskowski was promised $5,000 by co-defendant Starnes.

Laskowski came to be married to Medik through Starnes. In or about December 2002, Laskowski was at co-defendant Tammy Daniels' home when Starnes asked her if she would be willing to marry a foreign national so that the foreign national could receive United States immigration documentation that would allow the foreign national to stay in the United States. At the time, Laskowski was aware that Daniels had entered into a Starnes-arranged marriage to a foreign national in return for money and that Laskowski's boyfriend, Fred Chaney, had assisted Daniels with obtaining her marriage license. Laskowski initially told Starnes that she was not interested in entering into such a marriage.

In or about early January 2003, Fred Chaney, who was still Laskowski's boyfriend, again raised the issue of Laskowski marrying a foreign national. Laskowski ultimately agreed to enter into such a marriage.

On or about January 15, 2003, at Starnes' direction, Laskowski met with Starnes in Chicago, Illinois. Fred Chaney drove Laskowski to the meeting. Also present at the meeting were Medik and an individual known to Laskowski as Eugene.

3

At the meeting, Starnes directed everyone to go to Chicago City Hall, but in fact was referring to the Cook County Building in Chicago, Illinois. Upon arriving at the Cook County Building, Starnes and Eugene directed Laskowski and Medik to apply for a marriage certificate, which Laskowski and Medik did.

After obtaining the marriage certificate, Starnes, Eugene, Fred Chaney, Medik and Laskowski went to a currency exchange close to the Cook County Building. Inside of the currency exchange, Eugene had various documents notarized, including a prenuptial agreement between Medik and Laskowski.

On or about January 16, 2003, Laskowski and Medik participated in a civil marriage ceremony in Chicago, Illinois. Fred Chaney drove Laskowski and Starnes to the ceremony. Starnes did not attend the actual marriage ceremony, stating to Laskowski that if he was in the ceremonial room too many times, it would start to look suspicious.

After the marriage ceremony, Starnes and Laskowski drove to a restaurant where Medik and Laskowski posed for photographs that were to be used at an immigration interview that would occur in the future. It was Starnes' idea to take the photographs. On the way to the restaurant, Starnes paid Laskowski $1,000 cash, representing the first payment of the $5,000 Starnes had promised to Laskowski for entering into the marriage.

On or about February 5, 2003, Laskowski went to an immigration attorney's office at Medik's request. Medik was also present. At the attorney's office, Laskowski signed various forms. One of the forms Laskowski signed was a "Petition for Alien Relative" or a

4

Form I-130. The Form I-130 set forth Laskowski's address as 407 South Park Street, Bensenville, Illinois. That information was false. Laskowski did not live at that address on the day she signed the form or at any other time. Rather, at the time Laskowski signed the form, Laskowski and Fred Chaney were living together in an apartment in Chicago, Illinois.

In or about April 2003, Laskowski contacted Medik and told him that he owed Laskowski another $1,000, representing the second installment payment on the $5,000 Laskowski was owed. Shortly after contacting Medik, Fred Chaney and Laskowski met with Medik, and Medik paid Laskowski $1,000 cash.

Laskowski also assisted Fred Chaney with his fraudulent marriage to a foreign national, the purpose of which was to obtain immigration benefits for the foreign national and money for Chaney. In or about December 2002, Laskowski had a face-to-face conversation with Fred Chaney during which he told Laskowski that Starnes was arranging for him marry a foreign national. At the time, Fred Chaney and Laskowski were dating and living together.

In or about February 2003, Fred Chaney and Ewa Jelen (known to Laskowski as Eva), a foreign national, participated in a civil marriage ceremony in Chicago, Illinois. Laskowski drove to the marriage ceremony with Fred Chaney.

On or about March 11, 2003, Laskowski went to an immigration attorney's office with Fred Chaney and Jelen. While at the office, Laskowski signed a form entitled "Affidavit of Support Under Section 213A of the Act" (the "Affidavit of Support"). The purpose of the

5

Affidavit of Support was to show that Laskowski had the income to support Jelen, if necessary. Laskowski signed the Affidavit of Support at Fred Chaney's request because he did not have the assets necessary to sign the affidavit himself.

Laskowski also accompanied coconspirators Amy Dupree and Cari Arrieta to their civil marriage ceremonies in Chicago, Illinois. Laskowski knew that the purpose of Dupree and Arrieta's marriage ceremonies was for them to marry foreign nationals so that the foreign nationals could obtain immigration benefits and Dupree and Arrieta could earn money. Starnes arranged the marriages between Dupree and her foreign national husband and Arrieta and her foreign national husband.

7.     The foregoing facts are set forth solely to assist the court in determining whether a factual basis exists for defendant's plea of guilty, and are not intended to be a complete or comprehensive statement of all the facts within defendant's personal knowledge regarding the charged crimes and related conduct or the criminal conduct of others.

### Maximum Statutory Penalties

8.     Defendant understands that the charge to which she is pleading guilty carries the following statutory penalties:

a.     A maximum sentence of 5 years' imprisonment. This offense also carries a maximum fine of $250,000. Defendant further understands that the judge also may impose a term of supervised release of not more than three years.

6

b.    In accord with Title 18, United States Code, Section 3013, defendant will be assessed $100 on the charge to which she has pled guilty, in addition to any other penalty imposed.

## Sentencing Guidelines Calculations

9.    Defendant understands that in imposing sentence the Court will be guided by the United States Sentencing Guidelines. Defendant understands that the Sentencing Guidelines are advisory, not mandatory, but that the Court must consider the Guidelines in determining a reasonable sentence.

10.    For purposes of calculating the Sentencing Guidelines, the parties agree on the following points:

a.    **Applicable Guidelines.** The Sentencing Guidelines to be applied in this case are those in effect at the time of sentencing. The following statements regarding the calculation of the Sentencing Guidelines are based on the Guidelines Manual currently in effect, namely the November 2006 Guideline Manual.

b.    **Offense Level Calculations.**

i.    The base offense level for the charge in Count One of the indictment is 11, pursuant to Guideline § 2L2.1(a).

ii.    There should be no adjustment of defendant's offense level for her role in the offense.

7

iii.    Defendant has clearly demonstrated a recognition and affirmative acceptance of personal responsibility for her criminal conduct. If the government does not receive additional evidence in conflict with this provision, and if defendant continues to accept responsibility for her actions within the meaning of Guideline § 3El.l(a), including by furnishing the United States Attorney's Office and the Probation Office with all requested financial information relevant to her ability to satisfy any fine that may be imposed in this case, a two-level reduction in the offense level is appropriate.

c.    **Criminal History Category.** With regard to determining defendant's criminal history points and criminal history category, based on the facts now known to the government, defendant's criminal history points equal zero and defendant's criminal history category is I.

d.    **Anticipated Advisory Sentencing Guidelines Range.** Therefore, based on the facts now known to the government, the anticipated offense level is 9, which, when combined with the anticipated criminal history category of I, results in an anticipated advisory Sentencing Guidelines range of 4 to 10 months' imprisonment, in addition to any supervised release, fine, and restitution the Court may impose.

e.    Defendant and her attorney and the government acknowledge that the above Guideline calculations are preliminary in nature and based on facts known to the parties as of the time of this Plea Agreement. Defendant understands that the Probation Office will conduct its own investigation and that the Court ultimately determines the facts

and law relevant to sentencing, and that the Court's determinations govern the final Guideline calculation. Accordingly, the validity of this Agreement is not contingent upon the probation officer's or the Court's concurrence with the above calculations, and defendant shall not have a right to withdraw her plea on the basis of the Court's rejection of these calculations.

f.      Both parties expressly acknowledge that this plea agreement is not governed by Fed.R.Crim.P. 11(c)(1)(B), and that errors in applying or interpreting any of the Sentencing Guidelines may be corrected by either party prior to sentencing. The parties may correct these errors either by stipulation or by a statement to the Probation Office or the Court, setting forth the disagreement regarding the applicable provisions of the Guidelines. The validity of this Plea Agreement will not be affected by such corrections, and defendant shall not have a right to withdraw her plea, nor the government the right to vacate this Plea Agreement, on the basis of such corrections.

## Cooperation

11.     Defendant agrees she will fully and truthfully cooperate with the United States Attorney for the Northern District of Illinois in any matter in which she is called upon to cooperate. This cooperation shall include providing complete and truthful information in any investigation and pre-trial preparation and complete and truthful testimony in any criminal, civil or administrative proceeding. Only the United States Attorney for the Northern District of Illinois may require defendant's cooperation pursuant to this Plea Agreement. Defendant agrees to the postponement of her sentencing until after the conclusion of her cooperation.

9

## Agreements Relating to Sentencing

12.     At the time of sentencing, the government shall make known to the sentencing judge the extent of defendant's cooperation. If the government determines that defendant has continued to provide full and truthful cooperation as required by this plea agreement, then the government shall move the Court, pursuant to Guideline § 5K1.1, to depart downward from the low end of the applicable Guideline range. Defendant understands that the decision to depart from the applicable Guideline range rests solely with the Court. The government will make no recommendation regarding the sentence to be imposed.

13.     If the government does not move the Court, pursuant to Sentencing Guideline § 5K1.1, to depart from the applicable Guideline range, as set forth above, the preceding paragraph of this plea agreement will be inoperative, and the Court shall impose a sentence taking into consideration the factors set forth in 18 U.S.C. § 3553(a) as well as the Sentencing Guidelines without any downward departure for cooperation pursuant to § 5K1.1. Defendant may not withdraw her plea of guilty because the government has failed to make a motion pursuant to Sentencing Guideline § 5K1.1.

14.     It is understood by the parties that the sentencing judge is neither a party to nor bound by this Plea Agreement and may impose a sentence up to the maximum penalties as set forth above. Defendant further acknowledges that if the Court does not accept the sentencing recommendation of the parties, defendant will have no right to withdraw her guilty plea.

15.     Defendant agrees to pay the special assessment of $100 at the time of sentencing with a cashier's check or money order payable to the Clerk of the U.S. District Court.

16.     After sentence has been imposed on the count to which defendant pleads guilty as agreed herein, the government will move to dismiss the remaining count of the indictment as to this defendant.

## Presentence Investigation Report/Post-Sentence Supervision

17.     Defendant understands that the United States Attorney's Office in its submission to the Probation Department as part of the Pre-Sentence Report and at sentencing shall fully apprise the District Court and the Probation Office of the nature, scope and extent of defendant's conduct regarding the charges against her, and related matters. The government will make known all matters in aggravation and mitigation relevant to the issue of sentencing, including the nature and extent of defendant's cooperation.

18.     Defendant agrees to truthfully and completely execute a Financial Statement (with supporting documentation) prior to sentencing, to be provided to and shared among the Court, the Probation Office, and the United States Attorney's Office regarding all details of her financial circumstances, including her recent income tax returns as specified by the probation officer. Defendant understands that providing false or incomplete information, or refusing to provide this information, may be used as a basis for denial of a reduction for acceptance of responsibility pursuant to Guideline § 3E1.1 and enhancement of her sentence

11

for obstruction of justice under Guideline § 3C1.1, and may be prosecuted as a violation of Title 18, United States Code, Section 1001 or as a contempt of the Court.

19. For the purpose of monitoring defendant's compliance with her obligations to pay a fine during any term of supervised release or probation to which defendant is sentenced, defendant further consents to the disclosure by the IRS to the Probation Office and the United States Attorney's Office of defendant's individual income tax returns (together with extensions, correspondence, and other tax information) filed subsequent to defendant's sentencing, to and including the final year of any period of supervised release or probation to which defendant is sentenced. Defendant also agrees that a certified copy of this Plea Agreement shall be sufficient evidence of defendant's request to the IRS to disclose the returns and return information, as provided for in Title 26, United States Code, Section 6103(b).

## Acknowledgments and Waivers Regarding Plea of Guilty

### Nature of Plea Agreement

20. This Plea Agreement is entirely voluntary and represents the entire agreement between the United States Attorney and defendant regarding defendant's criminal liability in case 07 CR 364.

21. This Plea Agreement concerns criminal liability only. Except as expressly set forth in this Agreement, nothing herein shall constitute a limitation, waiver or release by the United States or any of its agencies of any administrative or judicial civil claim, demand or

12

cause of action it may have against defendant or any other person or entity. The obligations of this Agreement are limited to the United States Attorney's Office for the Northern District of Illinois and cannot bind any other federal, state or local prosecuting, administrative or regulatory authorities, except as expressly set forth in this Agreement.

### Waiver of Rights

22.     Defendant understands that by pleading guilty she surrenders certain rights, including the following:

a.     **Trial rights.** Defendant has the right to persist in a plea of not guilty to the charges against her, and if she does, she would have the right to a public and speedy trial.

i.     The trial could be either a jury trial or a trial by the judge sitting without a jury. Defendant has a right to a jury trial. However, in order that the trial be conducted by the judge sitting without a jury, defendant, the government, and the judge all must agree that the trial be conducted by the judge without a jury.

ii.     If the trial is a jury trial, the jury would be composed of twelve citizens from the district, selected at random. Defendant and her attorney would participate in choosing the jury by requesting that the Court remove prospective jurors for cause where actual bias or other disqualification is shown, or by removing prospective jurors without cause by exercising peremptory challenges.

13

iii.     If the trial is a jury trial, the jury would be instructed that defendant is presumed innocent, that the government has the burden of proving defendant guilty beyond a reasonable doubt, and that the jury could not convict her unless, after hearing all the evidence, it was persuaded of her guilt beyond a reasonable doubt and that it was to consider each count of the indictment separately. The jury would have to agree unanimously as to each count before it could return a verdict of guilty or not guilty as to that count.

iv.     If the trial is held by the judge without a jury, the judge would find the facts and determine, after hearing all the evidence, and considering each count separately, whether or not the judge was persuaded that the government had established defendant's guilt beyond a reasonable doubt.

v.     At a trial, whether by a jury or a judge, the government would be required to present its witnesses and other evidence against defendant. Defendant would be able to confront those government witnesses and her attorney would be able to cross-examine them.

vi.     At a trial, defendant could present witnesses and other evidence in her own behalf. If the witnesses for defendant would not appear voluntarily, she could require their attendance through the subpoena power of the Court. A defendant is not required to present any evidence.

14

vii.    At a trial, defendant would have a privilege against self-incrimination so that she could decline to testify, and no inference of guilt could be drawn from her refusal to testify. If defendant desired to do so, she could testify in her own behalf.

b.    **Waiver of appellate and collateral rights.** Defendant further understands she is waiving all appellate issues that might have been available if she had exercised her right to trial. Defendant is aware that Title 18, United States Code, Section 3742 affords a defendant the right to appeal her conviction and the sentence imposed. Acknowledging this, defendant knowingly waives the right to appeal her conviction and any part of the sentence, including any term of imprisonment and fine within the maximums provided by law, and including any order of restitution or forfeiture (or the manner in which that sentence was determined), in exchange for the concessions made by the United States in this Plea Agreement. In addition, defendant also waives her right to challenge her conviction and sentence, and the manner in which the sentence was determined, in any collateral attack or future challenge, including but not limited to a motion brought under Title 28, United States Code, Section 2255. The waiver in this paragraph does not apply to a claim of involuntariness, or ineffective assistance of counsel, which relates directly to this waiver or to its negotiation.

c.    Defendant understands that by pleading guilty she is waiving all the rights set forth in the prior paragraphs. Defendant's attorney has explained those rights to her, and the consequences of her waiver of those rights.

23.    By entering this plea of guilty, defendant also waives any and all right the defendant may have, pursuant to 18 U.S.C. § 3600, to require DNA testing of any physical evidence in the possession of the Government. Defendant fully understands that, as a result of this waiver, any physical evidence in this case will not be preserved by the Government and will therefore not be available for DNA testing in the future.

### Other Terms

24.    Defendant agrees to cooperate with the United States Attorney's Office in collecting any unpaid fine for which defendant is liable, including providing financial statements and supporting records as requested by the United States Attorney's Office.

### Conclusion

25.    Defendant understands that this Plea Agreement will be filed with the Court, will become a matter of public record and may be disclosed to any person.

26.    Defendant understands that her compliance with each part of this Plea Agreement extends throughout the period of her sentence, and failure to abide by any term of the Agreement is a violation of the Agreement. Defendant further understands that in the event she violates this Agreement, the government, at its option, may move to vacate the Agreement, rendering it null and void, and thereafter prosecute defendant not subject to any of the limits set forth in this Agreement, or may move to resentence defendant or require defendant's specific performance of this Agreement. Defendant understands and agrees that in the event that the Court permits defendant to withdraw from this Agreement, or defendant

16

breaches any of its terms and the government elects to void the Agreement and prosecute defendant, any prosecutions that are not time-barred by the applicable statute of limitations on the date of the signing of this Agreement may be commenced against defendant in accordance with this paragraph, notwithstanding the expiration of the statute of limitations between the signing of this Agreement and the commencement of such prosecutions.

27.    Should the judge refuse to accept defendant's plea of guilty, this Plea Agreement shall become null and void and neither party will be bound thereto.

28.    Defendant and her attorney acknowledge that no threats, promises, or representations have been made, nor agreements reached, other than those set forth in this Plea Agreement to cause defendant to plead guilty.

29.    Defendant acknowledges that she has read this Plea Agreement and carefully reviewed each provision with her attorney. Defendant further acknowledges that she understands and voluntarily accepts each and every term and condition of this Agreement.

AGREED THIS DATE: _Oct. 11, 2007_

PATRICK J. FITZGERALD
United States Attorney

LINDA LASKOWSKI
Defendant

SCOTT R. DRURY
Assistant U.S. Attorney

PHILIP A. IGOE
Attorney for Defendant

17